IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH ALLAN LIM, | : | |
| Plaintiff, | : | 1:14-cv-108 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| ROLANDO CRUZ, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

## March 13, 2015

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

On January 22, 2014, Plaintiff, Joseph Allan Lim, an inmate previously confined at the York County Prison, in York, Pennsylvania,[1] initiated this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The named Defendants are: Doug Hoke, York County Commissioner; and the following employees of the York County Prison: Mary Sabol, Warden; Rolando Cruz, Captain; Sean Rohrbaugh, Captain; Jeffrey Gibson, Lieutenant; Claire Doll, Deputy Warden of Treatment; M. Buono, Deputy Warden of Security; Grier, Correctional Officer; John Straley, Correctional Officer; Max Fink, Correctional Officer; Jack Snyder, Correctional Officer; and, Valerie Krepps, Grievance Coordinator. (*Id.*).

Presently pending before the Court is Defendants' motion to dismiss

---

[1] Plaintiff is currently confined at the State Correctional Institution in Somerset, Pennsylvania.

Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 15). For the reasons set forth below, the motion will be granted.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint on January 22, 2014. (Doc. 1). Initially, Plaintiff alleges that Defendant Hoke "is legally responsible for the overall operation of the County of York ... including the York County Prison." (*Id.* at p. 1). Plaintiff also alleges that Defendant Sabol "is responsible legally for the operation of the York County Prison and for the welfare of all the inmates in that prison." (*Id.*).

Plaintiff alleges that on June 4, 2012, he witnessed a retaliatory cell search and verbal assault of another inmate by Defendant Straley. (*Id.* at p. 2). Plaintiff alleges that he filed a grievance regarding the events he witnessed. (*Id.*). The grievance and subsequent appeal were denied because "[i]nmates may not file a grievance on behalf of another inmate." (*Id.* at pp. 2-3).

Also on June 4, 2012, Plaintiff filed a grievance regarding the denial of the "right to send/receive mail." (*Id.* at p. 3). The grievance was rejected and signed by Defendant Krepps. (*Id.*).

Plaintiff alleges that in the early hours of June 7, 2012, he was removed from his cell by Defendant Grier and informed that he was being moved to a different

cell. (*Id.*). Before the move, Plaintiff was questioned by Defendant Cruz as to why he filed grievances. (*Id.*). During this "interrogation", Plaintiff claims that Defendants Cruz and Fink warned him to "mind [his] business" and indicated that he was being moved to a different housing block based on his grievance statements that he feared for his "well-being and safety." (*Id.*). However, in an apparent attempt to avoid the move, Plaintiff states that he did not fear physical harm, rather he feared "mental, psychological, emotional, and reta[]liatory forms of 'harm'". (*Id.*). Regardless, Plaintiff was moved to a differing housing block. (*Id.* at pp. 3-4).

Plaintiff alleges that when he was escorted to the new housing block, he was subjected to an unwarranted strip search. (*Id.* at p. 4). Plaintiff initially refused the strip search, but he alleges that Defendants Gibson, Fink and Snyder threatened to assault him and forcefully perform the strip search in an "unsanitary cell" if he did not comply. (*Id.*). Plaintiff submitted to the strip search, on the condition that the officers provide their names and badge numbers so Plaintiff could pursue a lawsuit against them. (*Id.*). Plaintiff claims that he was asked to sign forms regarding the cell condition, which he refused to signed, and was forced to sign a personal property inventory form, without being able to verify if any property was missing. (*Id.*). Plaintiff claims that some of his property was missing and/or broken, including legal mail and grievance paperwork. (*Id.*).

On June 7, 2012, Plaintiff claims that he filed a grievance regarding the inventory of his personal property. (*Id.* at p. 5). Plaintiff states that Defendant Rohrbaugh responded to the grievance on July 5, 2012. (*Id.*).

Plaintiff alleges that due to the above-described treatment, he went on a hunger strike until he could speak to Defendant Sabol. (*Id.*).

Plaintiff also states that he "correspond[ed]" with Defendant Reihart. (*Id.* at p. 5).

Based on the foregoing, Plaintiff alleges violations of his First Amendment right to free speech, right to due process, right to be free from unwarranted searches and seizures, and free from cruel and unusual punishment, and he expresses dissatisfaction with the prison grievance system. (*Id.* at p. 7).

For relief, Plaintiff seeks compensatory and punitive damages, injunctive relief, and costs. (*Id.* at p. 2).

On June 6, 2014, Defendants filed the instant motion to dismiss along with a supporting brief. (Docs. 15, 16). Defendants move to dismiss Plaintiff's complaint based on his failure to establish a specific violation of his constitutional rights. (Doc. 16). Specifically, Defendants argue that Plaintiff failed to allege the personal involvement of Defendants Hoke and Sabol, and failed to maintain any constitutional claim based upon the inadequacy of the prison grievance system,

4

denial of the use of mail, being subjected to a strip search, and right to a specific cell assignment. (*Id.*). On September 16, 2014, Plaintiff filed a brief in opposition to the motion to dismiss. (Doc. 18).

## II.   STANDARD OF REVIEW

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 334 Fed. Appx. 454, 456 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must then determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679); *see also* 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; FED. R. CIV. P. 8(a)(2).

### III.   DISCUSSION

*A.   Personal Involvement/ Respondeat Superior*

Local government units and supervisors typically are not liable under section 1983 solely on a theory of *respondeat superior*. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985); *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). *See also Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual

>knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207-08 (citations omitted).

A section 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

With respect to Defendants Hoke and Sabol, a review of the complaint confirms that Plaintiff sued them based on their alleged legal responsibility for the York County Prison. (Doc. 1, p. 1). Specifically, Plaintiff alleges that Defendant Hoke, in his capacity as the York County Commissioner, "is legally responsible for the overall operation of the County of York and each institution under its jurisdiction including the York County Prison", and that Defendant Sabol, in her capacity as Warden, "is responsible legally for the operation of the York County Prison and for the welfare of all the inmates in that prison." (*Id.*). There are no specific assertions that either of these Defendants had any personal involvement in

the purported violations of Plaintiff's rights. Rather, the claims asserted against these Defendants are premised upon their respective supervisory positions in York County and within the prison. Notably, there is no further reference to Defendant Hoke in the pleadings. The only reference to Defendant Sabol is Plaintiff's statement that he declared to be on a hunger strike until he spoke with her. (*Id.* at p. 4).

Based upon an application of the above standards, Plaintiff's allegations are insufficient to satisfy the personal involvement requirement standard of *Rode* and Defendants Hoke and Sabol are entitled to dismissal on this ground.

Likewise, in order to hold officials liable for failure to supervise or train subordinates properly, the plaintiff must allege facts which demonstrate more than the mere occurrence of an isolated incident in which an individual was deprived of constitutional rights. *Tuttle*, 471 U.S. at 820-21. In his brief in opposition to the motion to dismiss, Plaintiff makes a sweeping allegation against Defendants that they failed to properly train and/or supervise their subordinates. (Doc. 18, p. 3). Plaintiff fails to name any Defendants in reference to this allegation and provides no facts establishing a pattern or practice of misconduct or abuse. Therefore, Plaintiff has failed to state a section 1983 claim and any claim relating to failure to supervise and train will be dismissed.

B.     *Prison Grievance System*

"There is no constitutional right to a grievance procedure." *Smith v. Municipality of Lycoming County*, 2006 WL 1793228, *3 (M.D. Pa. 2006) (Conner, J.) (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977)).  Prisoners do have the right to seek redress of their grievances from the government, but that right is the right of access to the courts.  *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997).  However, the right of access to the courts is not compromised by the failure of prison officials to address the inmate's grievances.  *Id.  See also Hoover v. Watson*, 886 F. Supp. 410, 418-19 (D. Del. 1995), *aff'd without opinion*, 74 F.3d 1226 (3d Cir. 1995).  Additionally, a prisoner's "dissatisfaction with the manner his grievances were handled does not rise to the level of a constitutional violation", *Smith*, 2006 U.S. Dist. LEXIS 43356 at *3, and the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation", *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992).

Thus, to the extent that Plaintiff alleges that any Defendants are sued in their capacity for denying Plaintiff's grievances, dissatisfaction with a response to an inmate's grievance does not support a constitutional claim.  *See Alexander v. Gennarini*, 144 Fed. Appx. 924 (3d Cir. 2005) (concluding that involvement in the

post-incident grievance process is not a basis for § 1983 liability); *Pryor-El v. Kelly*, 892 F. Supp. 261, 275 (D.D.C. 1995) (finding that because the prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with the grievance procedure is not actionable). *See also Cole v. Sobina*, 2007 WL 4460617, *5 (W.D. Pa. 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").

Plaintiff alleges that he filed grievances regarding the denial of his right to send/receive mail, the loss of his personal property, and the cell search and verbal assault of another inmate. (Doc. 1, pp. 2, 3, 5). As to the alleged denial of the use of mail and the loss of his personal property, Plaintiff sets forth no facts in support of these claims and, to the extent that he is not satisfied with the results of these grievances, Plaintiff has not stated an actionable claim.

As to Plaintiff's allegation that Defendants Cruz and Fink warned him to "mind [his] business" regarding the filing of grievances, verbal harassment or threats, without some reinforcing act accompanying them, do not state a constitutional claim. *See Robinson v. Taylor*, 204 Fed. Appx. 155, 156 (3d Cir. 2006); *Brown v. James*, 2009 WL 790124, *6-7 (M.D. Pa. 2009). *See also Clemens v. Lockett*, 2013 U.S. Dist. LEXIS 169348, *13-14 (W.D. Pa. 2013) (concluding

that the plaintiff's allegations that the defendants threatened him with physical harm for filing grievances did not state a constitutional deprivation).

Additionally, Plaintiff may not file a grievance on behalf of another inmate. *Kravitz v. Fischer*, 2014 WL 4199245 (N.D.N.Y. 2014). Plaintiff's dissatisfaction with the response to his grievance complaining of the events he witnessed regarding another inmate is insufficient to state a claim for relief. Moreover, the denial of this grievance did not implicate any of Plaintiff's constitutional rights.

Thus, Plaintiff has failed to state a claim related to his grievances and this claim will be dismissed.

C.   Mail

An inmate has a constitutional right to send and receive mail, *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989), and when a prison policy impinges on that right, "the regulation is valid if it is reasonably related to legitimate penological interests", *Turner v. Safley*, 482 U.S. 78, 89 (1987). A court "must accord substantial deference to the professional judgment of prison administrators" and the burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). "When a prisoner alleges that prison policies have denied him access to the courts, he must 'allege actual injury, such as the loss or rejection of a legal claim.'" *Stankowski v. Farley*,

487 F. Supp. 2d 543, 557 (M.D. Pa. 2007) (Munley, J.) (citing *Oliver v. Fauver*, 118 F.3d 175, 177 (3d Cir. 1997)).

In the instant action, Plaintiff's entire statement regarding his violation of the right to mail is as follows, Plaintiff "filed an 801 grievance of the complaint review system at 1:00AM in regards to the negligence and denial of the federal right to send/receive mail which in this case was the right to send mail." (sic) (Doc. 1, p. 3). Plaintiff made no allegations that his outgoing mail was to attorneys or to the courts. Additionally, he made no allegations of any actual injury. *See Oliver v. Tennis*, 2008 U.S. Dist. LEXIS 91922, *17-18 (M.D. Pa. 2008) (Blewitt, MJ.), *adopted by* 2008 U.S. Dist. LEXIS 86885 (2008) (McClure, J.) (dismissing for failure to state a claim the prisoner's allegation of denial of access to courts because he did not allege any injury to any of his lawsuits as a result of his legal mail being returned for his failure to pay the postage); *Wheeler v. Beard*, 2005 U.S. Dist. LEXIS 15842, *23-25 (E.D. Pa. 2005) (granting the motion to dismiss claims relating to access to courts because the plaintiff failed to allege any actual injury as a result of the prison's delays in sending his mail).

Moreover, actors in a prison setting such as Defendants are provided substantial deference, and Plaintiff has not alleged how the prison mail policy was unreasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89;

*Harper v. Beard*, 326 Fed. Appx. 630, 632 (3d Cir. 2009) (affirming dismissal of the plaintiff's claim of denial of access to the courts because he "failed to follow the established protocol for sending outgoing mail" and there was no evidence that any of the plaintiff's "legal mail was not received by its intended recipient"). In sum, Plaintiff failed to allege sufficient facts to support his denial of access to mail claim and it will be dismissed.

D.   *Strip Search*

A prisoner's challenge to a strip search may be cognizable under 42 U.S.C. § 1983 through the Fourth or Eighth Amendments. *See Seymour/Jones v. Spratts*, 1990 U.S. Dist. LEXIS 193, *4 (E.D. Pa. 1990), *citing Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979). To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable. *See Payton v. Vaughn*, 798 F. Supp. 258, 261-62 (E.D. Pa. 1992). Where a prisoner alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies. *See Jordan v. Cicchi*, 428 Fed. Appx. 195, 199-200 (3d Cir. 2011) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction"); *Robinson v. Ricci*, 2012 U.S. Dist. LEXIS 44011, *50 n.6 (D.N.J. 2012) (stating that, in addition to a possible Fourth

13

Amendment violation, the "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner").

Plaintiff appears to challenge his strip search as unreasonable under the Fourth Amendment. (Doc. 1, p. 4). Plaintiff does not allege excessive force or any injury resulting from a strip search. Rather, he alleges that he was threatened with the use of force, and then "conceded" to the strip search. (*Id.*).

The Third Circuit Court of Appeals has held that prison officials may conduct visual body cavity searches whenever an inmate enters and exits his cell in the restricted housing unit, if performed in a reasonable manner. *Millhouse v. Arbasak*, 373 Fed. Appx. 135, 137 (3d Cir. 2010) (citing *Bell*, 441 U.S. at 559-60). "When a prisoner moves through restricted areas of a correctional facility, it is not unreasonable for staff to check for contraband via visual body cavity searches upon the prisoner's return." *Jones v. Luzerne County Corr. Facility*, 2010 U.S. Dist. LEXIS 86430, *22-23 (M.D. Pa. 2010) (Vanaskie, J.) (citing *Millhouse*, 373 Fed. Appx. 135). Further, strip searches can be conducted by prison officials without probable cause. *Jones*, 2010 U.S. Dist. LEXIS 86430 at *22 ("[I]nmates do not have a right 'to be free from strip searches.'"), *citing Bell*, 441 U.S. at 558. *See also Small v. Wetzel*, 528 Fed. Appx. 202, 207 (3d Cir. 2013) ("it is constitutional to

conduct a full strip search of an individual detained in the general population of a jail, regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something") (citing *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S.Ct. 1510 (2012)).

This Court concludes that Plaintiff's strip search was not unreasonable and that accordingly he has failed to allege a valid Fourth Amendment violation. It was reasonable for the correctional officers to perform a strip search during a cell move in light of the legitimate penological goal of maintaining prison security and checking for contraband or dangerous items. The overall manner in which the strip search was conducted did not violate Plaintiff's constitutional rights and the alleged verbal harassment prior to the strip search did not cause the search to become unconstitutional. *See Vaughn v. Strickland*, 2013 WL 3481413 (S.D.N.Y. 2013) (dismissing a Fourth Amendment claim where a prisoner alleged verbal abuse during an intrusive strip search).

As the complaint does not allege that Defendants conducted the search in a physically abusive fashion or with excessive force, Plaintiff has failed to state an Eighth Amendment claim for relief.

As such, the conduct complained of does not rise to the level of a constitutional violation cognizable under section 1983 and this claim will be

dismissed.

*E.     Specific Cell Assignment*

It is well-established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Accordingly, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution." *Montanye*, 427 U.S. at 242. Similarly, it has long been recognized that the mere fact of a prison transfer, standing alone, does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *See*, *e.g.*, *McKeither v. Folino*, 540 Fed. Appx. 76 (3d Cir. 2013); *Hassain v. Johnson*, 790 F.2d 1420 (9th Cir. 1986); *Serrano v. Torres*, 764 F.2d 47 (1st Cir. 1985). Likewise "[a]n inmate does not have a right to be placed in the cell of his choice." *Sheehan v. Beyer*, 51 F.3d 1170, 1174 (3d Cir. 1995) (concluding that the inmate "had no constitutional right to remain in Unit 3-C instead of Unit 2-R"). In short, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983);

16

*Meachum v. Fano*, 427 U.S. 215 225 (1976); *Montanye*, 427 U.S. at 242.

Therefore, to the extent that Plaintiff attempts to premise his claim on a constitutional right to a particular housing assignment, this claim fails to state a cause of action upon which relief can be granted. Plaintiff has no constitutional right to a specific cell assignment and, as such, this claim will be dismissed.

F. *Claim for Injunctive Relief*

Plaintiff requests injunctive relief in the form of the Court directing that Defendants be required to undergo training, that they discontinue the prison strip search policy, and that they stop engaging in alleged criminal conduct. (Doc. 1, p. 2). Plaintiff's request for injunctive relief is moot because he is no longer confined at the York County Prison, nor is there any likelihood of his return. *Johnson v. Wenerowicz*, 440 Fed. Appx. 60, 62 (3d Cir. 2011) (holding that the prisoner's "requests for injunctive and declaratory relief against the named DOC defendants were rendered moot by his transfer" to another prison); *see also Fortes v. Harding*, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) (Vanaskie, J.) (concluding that a prisoner's "transfer to another institution moots any claims for injunctive or declaratory relief"). Accordingly, Plaintiff's request for injunctive relief will be dismissed as moot.

**IV.    CONCLUSION**

Based on the foregoing, Defendants' motion to dismiss will be granted. A separate Order follows.